**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

KARRISSA D.,[1]

                         Civil No. 24-2685 (JRT/SGE)

               Plaintiff,

v.                           **MEMORANDUM OPINION AND ORDER**
                               **ADOPTING REPORT AND**

FRANK BISIGNANO,                  **RECOMMEDATION**
*COMMISSIONER OF SOCIAL SECURITY*,

               Defendant.

---

Bryan Konoski, **KONOSKI & PARTNERS, P.C.**, 180 Tices Lane, Suite 204, Building A, East Brunswick, NJ 08816, for Plaintiff.

Ana H. Voss, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN, 55415; Frank D. Tankard, James D. Sides, and Sophie Doroba, **SOCIAL SECURITY ADMINISTRATION, OFFICE OF PROGRAM LITIGATION**, 6401 Security Boulevard, Baltimore, MD 21235, for Defendant.

The Commissioner of Social Security denied Plaintiff Karrissa D.'s ("Plaintiff") application for disability insurance benefits. After a hearing, the administrative law judge ("ALJ") determined that Plaintiff was not disabled under the Social Security Act. Plaintiff then brought this action against the Commissioner seeking review of the denial of her application for benefits. Magistrate Judge Shannon G. Elkins issued a Report and Recommendation ("R. & R.") recommending that the Court deny Plaintiff's request for

---

[1] The District of Minnesota has adopted the policy of using only the first name and last initial of nongovernmental parties in Social Security cases. The Court therefore refers to the Plaintiff in this Order using only her first name and last initial.

relief and affirm the Commissioner's denial of benefits. Plaintiff timely objected to the R. & R. Upon de novo review, *see* 28 U.S.C. § 636(b)(1)(c); D. Minn. LR 72.1(c)(2),) the Court will overrule Plaintiff's objections, adopt the R. & R., and affirm the Commissioner's denial of benefits because the ALJ's decision is supported by substantial evidence.

## BACKGROUND

The Court will first summarize the relevant statutory and regulatory framework, and then the Court will briefly detail the relevant factual and procedural background before providing its analysis.

## I.    STATUTORY AND REGULATORY FRAMEWORK

To receive Social Security Disability benefits, an applicant must be "disabled," as defined by the Social Security Act (the "SSA"). An individual is "disabled" under the SSA if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Under the SSA, the Social Security Administration follows a five-step sequential analysis to determine whether a claimant is disabled, considering: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or is equivalent to a listed impairment; (4) whether the claimant has sufficient residual functional capacity to return to her past work; and (5) whether the claimant can

do other work existing in significant numbers in the regional or national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Before proceeding to step four, the ALJ must assess the claimant's Residual Functional Capacity ("RFC").  20 C.F.R. §§ 404.1545(a), 416.945(a); *see also Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  The "[RFC] assessment determines what claimants would be capable of doing despite their physical and mental limitations."  *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)).  Assessing a claimant's RFC is a "medical question," and requires the ALJ to evaluate "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Eichelberger*, 390 F.3d at 591.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Disability Application

On January 16, 2021, Karrissa D. applied for a period of disability and disability insurance benefits, alleging that she became disabled on January 3, 2021.  (Soc. Sec. Administrative R.  ("Admin. R.") at 13, Sept. 12, 2024, Docket No. 7.)[2]  Plaintiff alleged disability due to polycystic ovarian syndrome, right knee patellofemoral dysfunction, left shoulder tendinopathy, psychogenic seizures, borderline personality, posttraumatic stress disorder, generalized anxiety disorder, depression, iron deficiency anemia, gastroesophageal reflux disease, and obesity.  (*Id.* at 15–16.)  Plaintiff's application was

---

[2] The Court cites to the CM/ECF pagination of the administrative record.

denied initially, denied again upon reconsideration, and denied after a hearing before the ALJ. (*Id.* at 13, 24.)

### B.   Medical Opinions[3]

The psychologist in the initial level determination opined that Plaintiff would have a mild limitation in understanding, remembering or applying information, concentration, persistence, pace, and adapting or managing herself, but she would not have any limitation on her interactions with others. (*Id.* at 21.)

The reconsideration psychologist stated that Plaintiff would have a mild limitation on her ability to understand, remember, and apply information and moderate limitations interacting with others, concentrating, persisting and maintaining pace, and adapting and managing herself. (*Id.* at 22.) The ALJ described the psychologist's opinion, in relevant part, as follows:

> She is capable of performing the basic mental demands of simple, unskilled work. The claimant is likely to struggle when interacting with the general public or when receiving criticism from supervisors. She would be able to work best away from the public and would likely need extra time to accept criticism. She retains the ability to follow basic work expectations. The claimant would have some difficulty being around other people for extended periods of time. The claimant would do better in jobs with little in the way of changes in the work setting. Major changes may induce stress and case exacerbation of her anxiety and mental health symptoms which cause a physical reaction in the form of pseudo seizure activity. The psychologist concluded that within the parameters of a static work environment, with few changes in the day-to-day work routine, only brief

---

[3] Although the record references several medical opinions, the Court refers only to those relevant to this appeal.

4

and superficial workplace interactions, and only routine, predictable work stressors, the claimant appears capable of simple, routine work tasks mentally.

(*Id.*)

### C.    The ALJ's Decision

The ALJ followed the required five-step sequential evaluation process under 20 C.F.R. § 404.1520 and determined that Plaintiff was not disabled. (*Id.* at 14–15.) At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity between her alleged onset date through her last insured date. (*Id.* at 15.) Although Plaintiff worked at Door Dash after the alleged onset date, the ALJ found that this work did not constitute substantial gainful activity. (*Id.*) At step two, the ALJ found Plaintiff had the following severe impairments: polycystic ovarian syndrome; right knee patellofemoral dysfunction; left shoulder tendinopathy; psychogenic seizures; borderline personality; posttraumatic stress disorder; generalized anxiety disorder; and depression. (*Id.* at 15–16.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met the criteria of any Social Security Income listings. (*Id.* at 16–18.) Before proceeding to step four, the ALJ found that Plaintiff had an RFC, in relevant part, to:

perform simple, routine and repetitive tasks. She can frequently interact with supervisors and co-workers for a work training period not to exceed 30 days, after which time she is limited to occasional interactions with supervisors and co-workers. She can have occasional interactions with the public. Finally, she would be limited to occasional changes in a routine work setting.

(*Id.* at 18–19.)  In doing so, the ALJ noted that he "considered all symptoms," "the objective medical evidence," "medical opinion(s)," and "prior administrative medical finding(s)." (*Id.* at 19.)

The ALJ also found the reconsideration psychologist's determination to be "generally persuasive," and relied on it when determining the RFC. (*Id.* at 22.)  But the ALJ's determinations differed from the reconsideration psychologist's opinion in two ways. (*Id.*)  First, the ALJ concluded that the limitation to "occasional public interactions" was more appropriate than a limitation to "brief and superficial interactions away from the public." (*Id.*)  The ALJ reasoned that the record—showing the Plaintiff socializes with friends and family and can shop and travel—supports this conclusion. (*Id.*)  Second, the ALJ distinguished an initial training period during which the claimant "could handle up to frequent interactions while learning the job." (*Id.*)  The ALJ based this distinction on (1) records showing the claimant is able to engage in treatment with medical providers; (2) Plaintiff's work history showing that she has no problems getting along with others during initial training periods; and (3) Plaintiff's "current work for Door Dash where she is required to deliver food to customers without any reported problems interacting with others." (*Id.*)

At step four, the ALJ found that Plaintiff did not have any past relevant work. (*Id.* at 23.)  At step five, the ALJ found that "considering the [plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant

numbers in the national economy that the claimant could have performed." (*Id.*)  This

determination was supported by testimony from a vocational expert.  (*Id.* at 24.)  The ALJ

therefore concluded that she was not disabled under the SSA.

Plaintiff requested review from the Appeals Council, and it found no basis to

change the ALJ's decision, thereby making the ALJ's decision the final decision of the

Commissioner.  (*Id.* at 4.)

### III.    PROCEDURAL BACKGROUND

Plaintiff appealed the ALJ's decision.  (Compl., July 11, 2024, Docket No. 1.)  Plaintiff

asserted that the ALJ erred by creating an illogical analysis regarding Plaintiff's contact

with supervisors and co-workers during and after a training period, failing to properly

account for her limitation to superficial contact in the RFC, and failing to properly account

for her limitations relating to public interaction in the RFC.  (Pl.'s Br. at 5, Nov. 11, 2024,

Docket No. 14.)  The Magistrate Judge ultimately issued a R. & R. recommending that the

Plaintiff's request for relief be denied and that the Commissioner's request for relief be

granted.  (R. & R. at 15, July 21, 2025, Docket No. 18.)

The Magistrate Judge rejected Plaintiff's argument that the ALJ's distinction

between frequent contact during the training period and occasional contact outside the

period was illogical and not supported by substantial evidence.  (R. & R. at 7.)  The

Magistrate Judge concluded that the ALJ had built the logical bridge by acknowledging

the psychologist's report and pointing to record evidence that supported making such

distinction. (*Id.* at 7–11.) The Court likewise found that the training period distinction was supported by substantial evidence. (*Id.* at 8–11.)

The Magistrate Judge also rejected Plaintiff's argument that the ALJ should have included a "superficial limitation into her workplace interactions" and limited her to minimal or no public contact. (*Id.* at 11–12.) The Magistrate Judge determined that the ALJ properly explained his decision to deviate from the psychologist's report by "acknowledging it, rejecting it, stating what he found instead, and identifying evidence he relied on in support of his finding." (*Id.* at 13.) Further, the Magistrate Judge concluded that there was substantial evidence to support an RFC without limitations on superficial contact and minimal public contact. (*Id.* at 14.)

Plaintiff timely objected to the R & R. (Pl.'s Objs. to R. & R. ("Pl.'s Objs."), Aug. 4, 2025, Docket No. 19.) The objections fall into two categories. First, Plaintiff objects to the Magistrate Judge's finding that the ALJ properly accounted for the training period distinction and argues that the distinction lacks substantial evidence. (*Id.* at 4–9.) Second, Plaintiff argues that the Magistrate Judge erred in finding that the ALJ properly addressed the superficial and public contact limitations. (*Id.* at 9–12.) In response, the Commissioner argues that the Court should overrule Plaintiffs' objections for the same reasons set forth in his brief submitted to the Magistrate Judge. (Def.'s Resp. to Pl.'s Objs. R. & R., Aug. 13, 2025, Docket No. 20; *see also* Def.'s Resp. Br., Dec. 5, 2024, Docket No. 17.) Because the Court finds that the ALJ's decision is logical and supported by substantial

evidence on the record as a whole, the Court will overrule Plaintiff's objections and adopt the R. & R.

## DISCUSSION

### I.    STANDARDS OF REVIEW

After a magistrate judge issues an R. & R., a party may file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews de novo "properly objected to" portions of an R. & R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015). Unobjected portions of the R. & R. are also reviewed for clear error. Fed. R. Civ. P. 72 advisory committee's note, subd.(b) ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

The Court also notes that Plaintiff's objections relating to the training period distinction and the superficial and public contact limitations are merely restatements of arguments she raised before the Magistrate Judge. Specifically, Plaintiff argued that the

9

training period distinction was illogical and lacked substantial evidence. (Pl.'s Br. at 5–15.) She also argued that the ALJ failed to address Plaintiffs' superficial and public contact limitations. (Pl. Br. at 15–27.) And here, Plaintiff disagrees with the Magistrate Judge's contrary conclusions. (Pls. Objs. at 4–12.) The Court therefore finds that these objections merely repeat prior arguments and are subject to review for clear error, which the Court does not find. But even if evaluated de novo, the Court does not find any error with the ALJ's decision.

Under the SSA, the Court's review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000). "Substantial evidence on the record as a whole," however, requires more than merely searching for evidence that supports the Commissioner's decision. *See Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir. 1987). Rather, "[t]he substantiality of evidence must take into account whatever evidence fairly detracts from its weight." *Minor v. Astrue,* 574 F.3d 625, 627 (8th Cir. 2009) (alteration in original). Nonetheless, deference is still owed to the Commissioner's decision and the Court "may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome." *Young,* 221 F.3d at 1068. If two inconsistent conclusions can reasonably be

drawn from the record and one represents the Commissioner's findings, the Court must affirm the decision. *Id.*

To meet the substantial evidence standard, the ALJ's decision must build a "logical bridge" such that the Court can "trace the path of the ALJ's reasoning." *Jacobs v. Astrue*, 08-431, 2009 WL 943859, at *3 (D. Minn. 2009) (citations omitted). Although the ALJ need not address all evidence in writing, the ALJ "must explain his rejection of uncontradicted evidence that would support the claim for benefits, in order to overcome the inference that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant." *Id*.

When evaluating whether substantial evidence supports the ALJ's conclusion, the Court may only consider the rationale the ALJ gave for the decision. *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87–88 (1943). Thus, even if there is evidence in the record for an alternative rationale that would support the outcome reached by the ALJ, a reviewing court may not search the record for this evidence. *See Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990). Still, standing alone, an ALJ's failure to adequately explain the rationale or factual findings or to address specific facts in the record does not require a reviewing court to remand if the record as a whole provides substantial evidence for the decision. *Vance v. Berryhill*, 860 F.3d 1114, 1118 (8th Cir. 2017).

II.    **TRAINING PERIOD DISTINCTION**

The ALJ determined that Plaintiff "can frequently interact with supervisors and co-workers for a work training period not to exceed 30 days, after which time she is limited to occasional interactions with supervisors and co-workers." (Admin. R. at 19.) Plaintiff argues that the Magistrate Judge erred in concluding that the ALJ adequately accounted for this training period distinction. (Pl.'s Objs. at 4–11.) Plaintiff generally challenges the training period distinction for two reasons. First, Plaintiff argues that the ALJ created a limitation not found in any medical opinion. (*Id.* at 4.) Second, Plaintiff contends that the distinction lacks substantial evidence because pre-onset work history is irrelevant; medical provider interactions are distinguishable from workplace interactions; and Plaintiff's employment with Door Dash supports more restrictive limitations, not less. (*Id.* at 5–8.) Plaintiff also raises a number of other minor objections, and those will be addressed in a separate section. The Court finds Plaintiff's arguments to be unavailing and will address each of them in turn.

A.    **Medical Evidence**

While the ALJ must consider at least some medical evidence in support of a claimant's RFC, the ALJ need not base the RFC only on medical evidence. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). In making this determination, "the ALJ is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022). Although Plaintiff correctly asserts that *Masterson* requires that the RFC

be grounded in medical evidence, (Pl.'s Objs. at 5), *Masterson* also states that the "RFC is based on all relevant evidence" and that the "ALJ is not limited to considering medical evidence." *Masterson*, 363 F.3d at 737–38.

The ALJ considered the reconsideration psychologist's opinion by recounting it and finding it "generally persuasive." (Admin R. 22.) However, the ALJ balanced that opinion against other relevant evidence, concluding that Plaintiff could "handle up to frequent interactions while learning the job." *Id.* In particular, the ALJ found that that the training period distinction was "consistent with" (1) evidence showing she can engage with medical providers; (2) a work history showing no issues working with others during training periods; and (3) her employment at Door Dash showing that she delivered food to customers without any reported difficulties interacting with others. *Id.* By acknowledging the reconsideration psychologist's opinion and citing other evidence of greater capabilities, the ALJ logically tied the determination that Plaintiff could handle frequent interactions during the training period.[4] This is not a case where the ALJ ignored uncontradicted evidence, "simply forgot it," or deemed it "irrelevant." *See Jacobs*, 2009

---

[4] *Cassandra O. v. Kijakazi*, 22-1587, 2023 WL 3855306, at *3 (D. Minn. Apr. 11, 2023) (concluding that the ALJ built logical bridge between evidence and the RFC's interaction limitations where "it specifically explained the discrepancy between her RFC and the prior administrative medical finding"), *R.& R. adopted*, 2023 WL 3558155 (D. Minn. May 18, 2023); *Clampit v. Comm'r of Soc. Sec.*, 22-1561, 2023 WL 2958158, at *6 (N.D. Ohio Mar. 30, 2023) ("Courts have reversed where . . . the ALJ does not provide an explanation for making a distinction in abilities before and after a training period"), *R. & R. adopted*, 2023 WL 2956613 (N.D. Ohio Apr. 14, 2023).

WL 943859, at *3.  Because the ALJ adequately considered the medical opinions and explained why it drew the training period distinction in forming the RFC, the training period distinction is permissible.

### B.    Substantial Evidence

Second, Plaintiff argues that the distinction lacks substantial evidence because pre-onset work history is irrelevant; medical provider interactions are not analogous to workplace interactions; and Plaintiff's Door Dash employment supports more restrictive limitations.  (Pl.'s Objs. at 5–7.)  These arguments fail.

The Court may consider pre-onset work history here because it is relevant.  In general, the government must evaluate all relevant evidence, which may include pre-onset work history.  *See* 20 C.F.R. § 404.1520(a)(3) (stating that the government "will consider all evidence in your case record when we make a determination or decision whether you are disabled"); *id.* § 404.1545(a)(1) (noting that a claimant's RFC must be based on "all the relevant evidence in [the claimant's] case record).[5]  Plaintiff cites no authority to the contrary.

---

[5] Several courts have held that pre-onset work history may be considered even though it may vary in its utility.  *See, e.g., Guzman v. Bisignano*, No. 23-1912, 2025 WL 1503149, at *4 (7th Cir. May 27, 2025) (noting that the "ALJ must consider the record as a whole, including evidence predating the onset date in the present case"); *Michaels v. Comm'r of Soc. Sec.*, 21-2, 2022 WL 971854, at *3 (M.D. Fla. Mar. 31, 2022) (acknowledging that although pre-onset evidence may be of limited relevance, it may still be considered).

Plaintiff's pre-onset work history is relevant here because Plaintiff's prior history sheds light on her current capabilities. At the hearing, the ALJ asked Plaintiff "why don't you tell me what the main issues are that you're having that make it difficult to work?" In response, Plaintiff replied:

> The complications I do have with holding down a regular job, not a gig job, is with my previous history. I can work up to three maybe six months. And from the high stress of dealing with customers or whatever the environment is, it causes me to have panic attacks, anxiety attacks, which can go into me having the pseudo seizures that I have.

(Admin. R. at 52.) This testimony, which relies on past work history, is relevant to her ability to complete a training period. The Court therefore rejects this argument.

Next, Plaintiff contends that the ALJ erred in supporting the training period distinction by pointing to Plaintiff's medical provider interactions. (Pl.'s Objs. at 6.) Again, Plaintiff cites no authority for this argument. It is well-established that a disability determination is based on all relevant evidence. 20 C.F.R §§ 404.1520(a)(3), 404.1545(a)(1). The Court sees no reason to categorically prohibit the ALJ from considering Plaintiff's interactions with medical providers when evaluating Plaintiff's abilities to interact with others in the workplace. *See Cassandra*, 2023 WL 3855306, at *3 (finding no error in the ALJ's reliance on the claimant's interactions with medical providers to assess her workplace limitations).

Finally, Plaintiff argues that her Door Dash employment supports more restrictive limitations, not less, reasoning that she chose to work for Door Dash to minimize social interaction. (Pl.'s Objs. at 7–8.) While that may true, the Court will not overturn the ALJ

simply because the Court "might have reached a different conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). At the hearing, Plaintiff testified that when working for Door Dash, she would "go to the merchant" and "pick up the order." (Admin. R. at 50.) She would then deliver the order "to the customer." (*Id.*) Given this testimony, the Court finds that the ALJ reasonably concluded that Plaintiff's employment at Door Dash indicated that she could handle a less restrictive social limitation. Although another ALJ could have weighed that evidence differently, the ALJ's decision was not outside the "available 'zone of choice.'" *See Nicola*, 480 F.3d at 886 (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).

### C.    Plaintiff's Other Arguments Regarding the Training Period Distinction

Plaintiff argues that the ALJ failed to sufficiently explain the decrease in Plaintiff's interaction capacity from frequent to occasional after the training period. (Pl.'s Objs. at 7.) Plaintiff contends that the decrease in interaction from frequent to occasional is a "logical inconsistency" that "effectively undermines the entire RFC finding." (*Id.* at 8.) Plaintiff further argues that the Magistrate Judge erred in assigning merit to Plaintiff's testimony approximating her capacity for work because the ALJ did not cite this testimony as evidence for distinguishing the training period. (*Id.* at 8.) The Court rejects Plaintiff's contentions.

Although the Court may only consider the rationale the ALJ gave for the decision, *Banks*, 258 F.3d at 823, the ALJ need not explain the underlying rationale behind the

decision if the record as a whole provides substantial evidence for the decision, *Vance*,

860 F.3d at 1118.

Here, the ALJ clearly articulated multiple reasons for drawing the training period

distinction: (1) records showed she could engage with medical providers; (2) Plaintiff's

work history did not reflect any issues dealing with others during initial training periods;

and (3) Plaintiff's work for Door Dash showed that she could deliver food to customers

without issue.  (Admin R. at 22.)

In reviewing the ALJ's decision, the Magistrate Judge offered Plaintiff's testimony

to merely show that the ALJ's articulated reason was supported by substantial evidence.

In particular, the Magistrate Judge properly cited to the record to show that the ALJ's

training period distinction was supported by substantial evidence: (1) Plaintiff's work at

Door Dash; (2) Plaintiff's work as a U.S. Bank customer service representative; (3)

Plaintiff's work as a Kwik Trip cashier; (4) Plaintiff's testimony explaining that she can only

work between three and six months before her stress causes her panic attacks and

pseudo seizures; (5) Plaintiff's report that no employer had ever terminated her because

of her ability to get along with others; and (5) Plaintiff's normal interactions with medical

providers.  (R. & R. at 8–9 (citing to the administrative record).) These examples

demonstrate that the Magistrate Judge did not engage in post hoc rationalization in

evaluating the ALJ's training period distinction.  Instead, the Magistrate Judge simply

pointed to evidence to show that the ALJ's decision was supported by substantial

evidence.  And even if the ALJ's rationale were lacking, remand is not required because Court finds that the decision is nonetheless supported by substantial evidence in the record as a whole.  *Vance*, 860 F.3d at 1118.

Finally, Plaintiff argues that *Jason L. v. O'Malley*, No. 23-184, 2024 WL 965240 (D. Minn. Mar. 6, 2024) is "controlling precedent" that requires the Court to remand.  (Pl.'s Objs. at 9.)  First, the Court notes that it is not bound by other decisions from this District. But even if it were, the Court finds that *Jason L.* is easily distinguishable, and in fact undercuts Plaintiff's position.  In *Jason L.*, three psychologists opined that plaintiff should be restricted to superficial interactions.  2024 WL 965240, at *1.   Despite finding these opinions to be "persuasive," the ALJ imposed an "occasional" interaction limitation "without explaining the reasons for the difference," and the district court remanded the case as a result.  *Id.* at *2.  In doing so, the court emphasized that the "ALJ may have a valid reason for excluding the proposed superficial interaction limitation in her RFC, but that reason must be explained."  *Id.*

But here, unlike in *Jason L.*, the ALJ provided a clear reason as to why he drew the training period distinction.  (Admin. R. at 22.)  That is, the distinction was "consistent with records showing [Plaintiff] is able to engage in the treatment process with medical providers, a work history that does not show problems getting along with others during initial work training periods, and current work for Door Dash where [Plaintiff] is required to deliver food to customers without any reported problems interacting with others."

18

(*Id.*)  Because the ALJ in this case stated a valid reason for imposing the training period

distinction, Plaintiff's citation to *Jason L.* is unpersuasive.[6]

## III.    SUPERFICIAL INTERACTIONS AND PUBLIC CONTACT LIMITATIONS

Plaintiff argues that the Magistrate Judge erred in determining that the ALJ

properly addressed superficial and public contact limitations.  (Pl.'s Objs. at 9–12.)

Although Plaintiff makes these arguments separately, the Court addresses them together

because they fail for similar reasons.

 "Occasional" and "superficial" are distinct descriptors in this context.  *See, e.g.*,

*Kenneth J.V. v. Kijakazi*, No. 22-373, 2023 WL 2394397, at *10 (D. Minn. Jan. 27, 2023).

"Occasional" refers to the "quantity of time spent with individuals," and "superficial"

refers to "the quality of the interactions."  *Id.*

Here, the reconsideration psychologist opined that Plaintiff was limited to "only

brief and superficial workplace interactions."  (Admin. R. at 22.)  The psychologist opined

further that Plaintiff was "likely to struggle when interacting with the general public" and

would "work best away from the public."  (*Id.*)  Although the ALJ found the psychologist's

opinion "generally persuasive," the ALJ nonetheless determined that "occasional public

---

[6] Plaintiff further contends that the vocational expert's testimony—that Plaintiff would be unable to complete the training period if restricted to occasional contact with supervisors and co-workers—demonstrates that she is disabled.  ((Pl.'s Objs. at 9 (citing Admin R. 77–78.).)  Because the Court has determined that the ALJ's training period distinction, which provided for frequent interactions during the training period, is logical and supported by substantial evidence, the Court therefore rejects this argument.

interactions" would be "more appropriate" than "brief and superficial interactions away from the public" because the "record shows [that] the claimant . . . socialize[s] with friends and family and can shop and travel." (*Id.*)

Plaintiff argued before the Magistrate Judge that the ALJ improperly substituted an occasional contact limitation in for a superficial contact limitation. (Pl.'s Br. at 18.) The Magistrate Judge dismissed this argument, recognizing that the ALJ rejected a superficial contact limitation by relying on the same evidence he used to impose an occasional contact limitation. (R. & R. at 13–14.) The Magistrate Judge found the ALJ's decision to be reasonable, reasoning that "evidence of Plaintiff's interactions with others will naturally provide insight into both the duration and depth of which she is capable of." (*Id.* at 14.) After making this connection, the Magistrate Judge concluded that the occasional contact limitation was supported by substantial evidence. (*Id.*)

Plaintiff raises several objections to the Magistrate Judge's assessment of the ALJ's decision. The Court will address each in turn.

First, Plaintiff again argues that *Jason L.*, 2024 WL 965240 is "controlling precedent" that necessitates remand. (Pl.'s Objs. at 9.) Again, the Court emphasizes that it is not bound by other district court decisions. Moreover, *Jason L.* is distinguishable because in that case, the ALJ excluded the proposed superficial interaction limitation in her RFC without explaining her reasoning. *Jason L.*, 2024 WL 965240, at *1. Whereas here, the ALJ explained that the superficial contact limitation was not supported because

the record demonstrated that Plaintiff "socialize[s] with friends and family and can shop and travel," and therefore, an "occasional public interactions" limitation was "more appropriate." (Admin. R. at 22.) Therefore, Plaintiff's reliance on *Jason L.* is unavailing.

Second, Plaintiff objects to the Magistrate Judge's reliance on *Lane v. O'Malley*, No. 23-1432, 2024 WL 302395 (8th Cir. Jan. 26, 2024). (Pl.'s Objs. at 10.) In *Lane*, two psychologists opined that the claimant should be limited to superficial interactions. *Lane*, 2024 WL 302396, at *1. Despite those opinions, the ALJ found that the claimant could "respond appropriately to occasional interaction with supervisors and co-workers but should have no team or tandem work with co-workers and no interaction with the general public." *Id.* The claimant argued that "occasional" and "superficial" have distinct meanings, and therefore, the ALJ's decision lacked substantial evidence because it referenced only "occasional" interactions and failed to include the persuasive psychologist's limitation to "superficial" interactions. *Id.* The Eighth Circuit dismissed this argument as a "manufactured inconsistency." *Id.*

Plaintiff argues that *Lane* distinguishable. (Pl.'s Objs. at 10.) Plaintiff again relies on *Jason L.*, which distinguished *Lane* and another recent Eighth Circuit case:

> Unlike the scenarios in two recent Eighth Circuit cases . . . which dealt with arguments related to the lack of restrictions on superficial workplace interactions, the ALJ here did not set any limits on the quality of workplace interactions. In contrast, in those earlier cases, the ALJ imposed both quantitative restrictions (limiting interactions to occasional) and qualitative restrictions (excluding teamwork and cooperative tasks).

21

*Jason L.*, 2024 WL 965240, at *2 (citing *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761 (8th Cir. Oct. 12, 2023); *Lane*, 2024 WL 302395).  Based on this excerpt from *Jason L.*, Plaintiff argues that *Lane* is distinguishable because the ALJ here did not impose any qualitative restrictions.  (Pl.'s Objs. at 10.)

This argument misses the mark because, as the court in *Jason L.* emphasized, "crucial point is that . . . the ALJ failed to justify excluding [the superficial contact] limitation from the RFC assessment" and thus remand was necessary.  *Jason L.*, 2024 WL 965240, at *2.  Here, contrary to Plaintiff's assertion that the ALJ never explained the omission of a superficial contact limitation, (Pl.'s Objs. at 10), the ALJ did provide such justification, concluding that an occasional public interactions limitation was "more appropriate" because Plaintiff can socialize with friends and family, shop, and travel. (Admin. R. at 22.)

The ALJ must consider "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations" to establish the claimant's maximum capability for work.  *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (alteration in original) (citation omitted); *see also* 20 C.F.R. § 404.1545(a)(1).  Here, the ALJ acknowledged the psychologist's opinion but explained that a different limitation was more appropriate and cited supporting evidence.  "Whether the ALJ should have provided *additional* limitations amounts to a disagreement over the weighing of evidence within the record, and 'it is not this Court's

role to reweigh that evidence.'" *Austin*, 52 F.4th at 731 (quoting *Schmitt*, 27 F.4th at 1361).

Several facts support the ALJ's decision to impose an occasional interaction limitation, as opposed to a superficial interaction limitation or a minimal public contact limitation. The record shows that Plaintiff can engage with medical providers. (*See, e.g.*, Admin. R. at 337, 367–368, 371–72, 376, 383, 397, 418–19, 425, 434, 440, 449–50, 463.) Plaintiff can socialize with family and friends multiple times a week. (*See, e.g.*, *id.* at 267, 624.) Plaintiff can shop and travel. (*See, e.g.*, *id.* at 266, 288; *id.* at pt. 2, 125–28.) Plaintiff can also pick up food from Door Dash and deliver it to customers. (Admin. R. at 50.) Although a factfinder could have weighed that evidence differently, the Court cannot say that the ALJ's decision was outside the "zone of choice."[7] *See Nicola*, 480 F.3d at 886.

Accordingly, the Magistrate Judge did not err in concluding that the ALJ properly accounted for superficial and public contact limitations when it determined that an occasional contact limitation was more appropriate. Although "occasional" and "superficial" have different meanings, the Court finds that the ALJ may rely on the same

---

[7] Because the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff was not limited in the quality of her interactions and was capable of occasional interactions, the Court can therefore reject Plaintiff's argument that the "ALJ failed to include superficial contact limitations in his hypothetical questions to the vocational expert." (Pl.'s Objs. at 11); *see Buckner v. Astrue*, 646 F.3d 549, 561 (8th Cir. 2011) (noting that "the ALJ's hypothetical question must include those impairments that the ALJ finds are substantially supported by the record as a whole"). Because substantial evidence supports the ALJ's RFC determination, which excluded limitations for superficial contact and minimal-to-no public contact, the ALJ did not err in omitting those restrictions from the hypothetical question posed to the vocational expert.

23

evidence when accepting (or rejecting) certain contact limitations because Plaintiff's interactions with others will naturally shed light on both quality and quantity of interactions Plaintiff is capable of having. Although Plaintiff may disagree with how the ALJ should have weighed the record evidence, the Court cannot say that the ALJ's decision to impose an occasional contact limitation was not supported by substantial evidence. [8]

## CONCLUSION

The Magistrate Judge did not err in concluding that the ALJ's training period distinction was logical and supported by substantial evidence. Nor did the Magistrate Judge err in determining that the ALJ properly accounted for Plaintiff's interaction limitations. Because the ALJ properly found that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy, considering Plaintiff's RFC, age, education, and work experience, the ALJ properly determined that Plaintiff was not disabled under the SSA. The Court will therefore adopt the Magistrate Judge's R. & R.

---

[8] Plaintiff argues that "[t]he Magistrate Judge applied an overly deferential standard" of review. (Pl's. Objs. at 12.) While the Court acknowledges that the substantial evidence standard is naturally deferential, the Court finds that the Magistrate Judge did not apply an *overly* deferential standard of review. *See Young*, 221 F.3d at 1068 (noting that the Court "may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have been supported a contrary outcome"). The ALJ here, as required, considered "all the relevant evidence" and explained why he found the occasional contact limitation to be "more appropriate" than a limitation for "brief and superficial interactions away from the public." 20 C.F.R. § 404.1545(a)(1); (Admin. R. at 22). Because the ALJ's decision is supported by substantial evidence, the Court rejects this argument.

ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Plaintiff Karrissa D.'s Objections to the Report and Recommendation [Docket

   No. 19] are **OVERRULED**;

2. The Report and Recommendation [Docket No. 18] is **ADOPTED**;

3. Plaintiff's request for relief [Docket No. 14] is **DENIED**;

4. Defendant's request for relief [Docket No. 17] is **GRANTED**; and

5. The Commissioner's final decision to deny benefits is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  September 30, 2025
at Minneapolis, Minnesota.                         JOHN R. TUNHEIM
                                                   United States District Judge